# Wright's Adm'r *v.* Wright's Distributees.

*Final Settlement and Distribution of Decedent's Estate.*

1. *Allowance to administrator, for board or maintenance of infant distributee.* It is not within the line of the ordinary authority and duty of an executor or administrator, to apply the assets in his hands to the maintenance of the widow and children, or other persons having an interest in the estate; and even when the testator's will charges his estate with the maintenance and education of an infant grandson, and authorizes his personal representative to make a reasonable appropriation of the assets for that purpose, the charge is subordinate to the payment of debts and expenses of administration; consequently, when the personal representative claims a credit, on final settlement of his accounts, for moneys expended for that purpose, he must show that there were assets remaining, after the payment of debts and expenses, which could properly be so applied.

[Wright's Adm'r v. Wright's Distributees.]

2. *Proof of voucher.*—A receipt for money paid, presented by an administrator as a voucher, is not self-proving; and if it is contested, the *onus* is on him to prove the payment, or the signature to the receipt.

APPEAL from the Probate Court of Macon.

In the matter of the final settlement and distribution of the estate of Charlton Wright, deceased, by Moses T. Wright, the administrator *de bonis* non, with the will annexed. The decedent died on the 29th January, 1869; and by his last will and testament, which was duly admitted to probate in said county, devised and bequeathed all his property to his wife, during life or widowhood; adding these words: "After her death, what remains of said property I want equally divided among my children," naming his nine children, and Henry J. Wright, a grandson, whose father was dead; "the last named, Henry J. Wright, to be maintained and schooled, and to have his father's share of the estate." The bill of exceptions states, that Moses T. Wright " qualified and gave bond as administrator of said estate, with the will annexed;" that the estate was regularly declared insolvent, on the 13th March, 1871; that said Moses T. Wright continued in the administration of said estate after the declaration of insolvency; and that said estate, by compromising claims against it, and by failure of creditors to file claims against it within the time allowed by law, became solvent."

In his accounts as stated by himself for settlement, the administrator claimed a credit for $500, "as per voucher No. 6;" which was a receipt, without date, purporting to be signed by John P. Wright, as guardian of Henry Wright, minor, appended to an account against Moses T. Wright, as administrator of Charlton Wright, deceased, " for board and education of said minor for the years 1871, '72, '73, '74, and '78, at $100 per year." The adult heirs of the estate objected to the allowance of a credit to the administrator for this item, and moved to strike it out of his account; " and in support of said motion, they introduced the decree of insolvency of said estate, which was admitted to be true, and also an agreement entered into by all the adult heirs of said estate," as follows:

"*Whereas*, the undersigned, heirs and distributees of the late Charlton Wright, deceased, who are also the heirs and distributees of the late T. J. Wright, deceased, have among themselves matters of controversy touching the ownership of certain assets, real and personal, of said two decedents, and touching the settlement of the administration of D. F. Wright upon the estate of T. J. Wright, deceased: Now, for the purpose of settling said controversy, and avoiding any further costs and litigation growing out of the same, have

entered into the following agreement: 1. The lands claimed by D. F. Wright, as administrator of the estate of T. J. Wright, are the lands of Charlton Wright, deceased, to be administered by his administrator. 2. The said D. F. Wright surrenders to the other heirs of said Charlton Wright the rent cotton grown on said lands during the year 1873, to-wit, four bales. 3. The said D. F. Wright is discharged from all further liability as such administrator, and his surrender of the lands and cotton above referred to, to the other heirs of said estate, is in full and entire satisfaction of all claims which we have against said administrator as such, and in full satisfaction of all interest which we have in and to the estate he has represented, viz., the estate of said T. J. Wright, deceased. 4. In the distribution of the assets of Charlton Wright, deceased, D. F. Wright surrenders to the other heirs · of said decedent all right, title and interest, which he has in and to the same, as heir or legatee of said decedent. 5. The assets o said Charlton Wright's estate, after paying the debts and exp nses of administration, shall be equally divided among the remaining heirs of said estate ; an account being first taken of advancements made, or purchases by said heirs, and the several and respective [interests] of each equalized on this basis. 6. That a final settlement and distribution of said estate shall be made, at as early a day as practicable, after the debts and expenses of administration are paid. 7. The rents due for the lands this year are a part of the assets of said Charlton Wright's estate, and are subject to the 5th article of this agreement. 8. It is the purpose and meaning of this agreement to make a final and complete set- tlement of all matters growing out of, or connected with the administration of D. F. Wright upon the estate of T. J. Wright, and give him a full acquittance therefrom ; as well as to determine the disposition of the assets of Charlton Wright, deceased. Witness our hands and seals, this 6th of January, 1874." (Signed by all the adult heirs, including Moses J. Wright.)

"It was proved, also, that the estate of said T. J. Wright was a separate and distinct estate, before said agreement was made ; that the heirs, under the law, of Charlton Wright, deceased, were also the heirs of said T. J. Wright; that said T. J. Wright died intestate, and his estate was solvent; that, at the time said agreement was made, the estate of Charlton Wright had been declared insolvent, and the claims against his estate proper, which had been paid, were more than suffi- cient to consume, and did consume the assets of his estate proper,—meaning thereby the estate of said Charlton alone, as distinguished from the estate of T. J. Wright, afterwards

administered under the name of the Charlton Wright estate.
This was all the evidence of the contestants. It was admit-
ted that said Charlton Wright died on the 29th January, 1869,
leaving a last will and testament, which was duly probated,
and which was introduced in evidence by the administrator.
It was proved, also, that said M. J. Wright continued in the
administration after the declaration of insolvency ; also, that
said estate, by compromising claims against it, and by the
failure of creditors to file their claims against it within the
time allowed by law, became solvent. It was further proved,
that the amount paid by said administrator to the guardian
of said minor, for board and education for the years named,
was reasonable and proper ; and that said minor, when said
account commenced, was about ten or eleven years of age.
This was all the proof; and the court thereupon sustained
the motion to strike out said item, and refused to allow said
administrator a credit for said payment." This ruling of the
court, to which the administrator reserved an exception, is
the only matter now assigned as error.

ABERCROMBIE & GRAHAM, and S. B. PAINE, for appellant.

W. C. BREWER, and W. C. McIVER, *contra.*

BRICKELL, C. J.—We do not find any error in this
record, prejudicial to the appellant. It is not within the line
of the ordinary authority and duty of an executor, or admin-
istrator, to apply the assets in his hands to the maintenance
of the widow and children, or others standing in a relation
of dependence to the testator, or intestate. It may be ad-
mitted, that the will of the testator charged his estate with
the maintenance and education of his grand-son, Henry J.
Wright, and that the executor, or an administrator *de bonis
non* with the will annexed, would have been authorized to
make a reasonable appropriation of the assets for that pur-
pose. The charge was subordinate to the payment of debts,
and the expenses of administration. It is not shown that
there were assets remaining after the payment of debts and
the expenses of administration, which could have been prop-
erly applied to the maintenance of the grand-son ; nor that
the allowance of the claim for his board would not have im-
posed it on the assets of the estate of Thomas J. Wright,
which were not subject to its payment.

Independent of this consideration, there was no evidence
offered of the correctness of the voucher, nor of the fact of
its payment. Vouchers presented by an administrator, are
not self-proving. If objection is made to them, the *onus* of

proof rests on the administrator or executor; and if evidence sufficient to create the presumption of the validity of the claim and its payment is not produced, a credit for it can not be allowed. The mere production of an instrument, purporting to be a receipt, without proof of the signature of the party by whom it purports to be signed, and who may be entitled to receive payment, is not proof of payment. *Gauntt v. Tucker,* 18 Ala. 27.

Let the judgment be affirmed.